UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| OTIS S., ) | |
|        Plaintiff,[1] ) | |
| ) | |
| v. ) | CAUSE NO.: 1:18-CV-372-WCL-JPK |
| ) | |
| ANDREW SAUL, Commissioner of ) | |
| Social Security Administration, ) | |
|        Defendant. ) | |

**FINDINGS, REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Complaint [DE 1], filed on November 9, 2018, and Plaintiff's Opening Brief [DE 19], filed on May 13, 2019. Defendant filed a responsive Memorandum [DE 23] on July 24, 2019, and Plaintiff did not file a reply.

On February 28, 2019, District Court Judge William C. Lee entered an Order [DE 14] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court reverse the decision of the Social Security Administration and remand for further proceedings.

**PROCEDURAL BACKGROUND**

On May 16, 2015, Plaintiff filed an application for disability insurance benefits alleging disability beginning May 15, 2011. (AR 116, 239).[2] On May 19, 2015, Plaintiff filed an application

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Report.

[2] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page number assigned by the Court's CM/ECF system.

for supplemental security income. (AR 117). The applications were denied initially and on reconsideration on August 25 and October 13, 2015. (AR 98-139).

Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on May 31, 2017. (AR 38). On September 19, 2017, the ALJ issued an unfavorable decision, making the following findings:[3]

> 1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2011.
>
> 2. The claimant may have engaged in substantial gainful activity at times after the alleged onset date.
>
> 3. The claimant has the following severe impairments: mild peripheral neuropathy in the setting of diabetes mellitus, degenerative changes (in the thoracolumbar spine, hips, sacroiliac joints, and knees), obesity, hypertension, and moderate left ventricular hypertrophy.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the [ALJ found] that the claimant has the residual functional capacity to lift, carry, push, and pull 10 pounds frequently and 45 pounds occasionally. In an eight-hour period, he can sit at least 6 hours and stand and/or walk 6 hours. He should not climb ropes, ladders, or scaffolds. He can occasionally kneel, crouch, crawl, and balance. He can occasionally bend and stoop in addition to what is required to sit. He can also occasionally use ramps and stairs. Aside from use of ramps and stairs on an occasional basis, he should not work upon uneven surfaces.
>
> 6. The claimant may be capable of performing some of his past relevant work.
>
>> [6.a.] [The ALJ also found that] when considering[] the claimant's age, education, work experience, and residual functional capacity, there

---

[3] Findings 1 through 6 quote the ALJ's bolded findings throughout the decision; the additional findings 6.a. through 6.d. quote the ALJ's underlying discussion. Internal citations to the Code of Federal Regulations are omitted.

are other jobs that exist in significant numbers in the national economy that the claimant also can perform.

[6.b.]    The claimant was born [in] 1965 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. He subsequently changed age category to closely approaching advanced age when he attained age 50 in . . . 2015.

[6.c.]    The claimant has at least a high school education and is able to communicate in English.

[6.d.]    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

7.    The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2011, through the date of this decision.

(AR 12-23).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff then filed this civil action seeking review of the agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. §§ 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

3

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits under the Social Security Act, a claimant must establish that he suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any impairment listed in the regulations as presumptively

disabling, (4) if the claimant does not meet a listing, whether the claimant is unable to perform his past relevant work, and (5) if the claimant is unable to perform past relevant work, whether he is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff asserts one ground for reversal: that the ALJ erred in rejecting certain opinions offered by agency consultative examiner Dr. H.M. Bacchus. In a medical report dated August 13, 2015, Dr. Bacchus opined: "Claimant appears to retain the physical functional capacity to perform light duties, at least part-time in nature, standing 2 hours in a 6-8 hour day, noncontinuous. He appears to have some limitations in regards to repetitive bending, squatting, twisting and turning, climbing and walking on uneven ground." (AR 607). The ALJ assigned no particular weight to any of these opinions, but included certain postural limitations in Plaintiff's RFC (no climbing and only occasional kneeling, crouching, crawling, balancing, bending, and stooping), which the ALJ found consistent with Dr. Bacchus's finding that Plaintiff would have some limitations in repetitive bending, squatting, twisting, turning, climbing, and walking on uneven ground. (AR 16, 21). But the ALJ rejected Dr. Bacchus's opinion limiting Plaintiff to "standing 2 hours in a 6-8 hour day, noncontinuous," and instead required that Plaintiff "stand and/or walk 6 hours." (AR 16, 21).

5

"As a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley*, 758 F.3d at 839. But still, Plaintiff argues, "rejecting or discounting the opinion of the agency's own examining physician that the claimants is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." (Pl.'s Br. 11, ECF No. 19 (quoting *Beardsley*, 758 F.3d at 839)). The Court agrees with Plaintiff that the ALJ in this case failed to provide a good explanation for rejecting Dr. Bacchus's opinion regarding Plaintiff's standing limitation. According to the ALJ's decision, this opinion was outweighed by "the claimant's lack of significant muscle strength deficits, as well as his lack of use of an assistive device for ambulation or balance." (AR 21). Based on those two findings, the ALJ concluded that Plaintiff "is able to stand/walk for a total of 6 hours in an eight-hour period." (AR 21). But while these facts were certainly worthy of consideration, neither provides the "good explanation" for rejecting an agency examiner's opinion that Seventh Circuit case law requires.

Turning first to the ALJ's finding of no "significant muscle strength deficits," this appears to be based on Dr. Bacchus's finding that Plaintiff had full strength in all extremities other than his left lower extremities, which had muscle strength decreased to 4 out of 5. (AR 15, 18, 21, 606). Putting aside the question of whether the ALJ correctly assessed this decrease as insignificant, the decision failed to explain how Plaintiff's muscle strength at any level bears on his ability to stand for six hours during an eight-hour workday. As Dr. Bacchus noted, Plaintiff's problems included chronic pain – particularly chronic lower back pain and bilateral hip pain, greater on the left – not merely muscle weakness. (AR 606-07). Dr. Bacchus also diagnosed diabetic neuropathy and attached an x-ray indicating moderate and severe spondylosis and degenerative disc disease in different areas of the lumbar spine (AR. 606, 608). The ALJ failed to explain how any of this

6

evidence was undermined by what he found to be an insignificant muscle strength deficit. Indeed, as several courts in this circuit have acknowledged, even full muscle strength is consistent with impairments that cause pain and thereby affect a claimant's functional limitations, including limited abilities to stand or walk.[4] An ALJ's independent reliance on a claimant's muscle strength to depart from a medical opinion regarding such limitations therefore suggests an improper tendency to "play doctor." *See supra* note 4.

The ALJ's repeated observation that Plaintiff uses no assistive device (AR 15, 21) is also problematic. This finding again appears to be based on Dr. Bacchus' examination, which noted no assistive device but an antalgic gait favoring Plaintiff's left hip. (AR 606). Other records also note a limp. (AR 628, 672, 674). As the Seventh Circuit has repeatedly observed, a claimant's demonstrated ability to walk without an assistive device during a consultative examination, particularly while limping, "does not demonstrate an ability to stand for 6 hours." *See Thomas v. Colvin*, 534 Fed App'x 546, 551 (7th Cir. 2013) ("walking for 50 feet without a cane—a 'brief excursion'—does not demonstrate an ability to stand for 6 hours") (citing *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("Dr. Villanueva noted that Scott successfully walked 50 feet without a

---

[4] *Shank v. Comm'r of Soc. Sec.*, No. 1:16-cv-184, 2018 WL 417175, at *6 (N.D. Ind. Jan. 16, 2018) (ALJ improperly rejected agency consultative examiner's opinion regarding limitation of non-continuous standing: "the Commissioner seems to be 'playing doctor' by suggesting *post hoc* that Shank's normal muscle strength in his legs is somehow inconsistent with his experiencing chronic back pain. . . . Indeed, a finding of normal muscle strength in Shank's legs does not automatically undermine Dr. Bacchus's opinion that Shank needed to be able to alternate positions with some frequency.") (citing *Lanzi-Bland v. Berryhill*, No. 16 C 8856, 2017 WL 4797529, at *4 (N.D. Ill. Oct. 24, 2017) (ALJ improperly rejected treating physician's opinion regarding standing and other limitations by relying upon documentation of normal gait and strength, where such findings were not inconsistent with doctor's conclusions regarding claimant's limitations and work abilities)); *accord Charles B. v. Saul*, No. 18 C 1377, 2019 WL 3557055, at *9 (N.D. Ill. Aug. 1, 2019) (ALJ improperly rejected treating physician's opinion regarding standing and other limitations: "The ALJ did not point to any medical evidence indicating that muscle strength must be diminished as a result of severe pain. Rather, the ALJ appears to have improperly resorted to playing doctor when he found that evidence of full strength in Charles's extremities was inconsistent with Dr. Masood's opinion on Charles's limitations and severe pain.") (citing *Shank* and *Fansler v. Astrue*, No. 1:07-CV-00081, 2008 WL 474205, at *7 (N.D. Ind. Feb. 19, 2008) ("the ALJ has not pointed to, nor does a review of the record reveal, a medical opinion that articulates an individual's muscle strength must be diminished if he is suffering from chronic pain. Rather, it appears that the ALJ succumbed to the temptation to 'play doctor' when he independently concluded that normal muscle strength is inconsistent with chronic pain.").

cane within the confines of her office, but that brief excursion hardly demonstrates an ability to stand for 6 hours (and neither does Scott's testimony that she could walk 2 blocks).")).

Apparently recognizing weakness in the ALJ's stated reasons for finding Plaintiff able to stand six hours during a normal workday, the Commissioner attempts to bolster that finding with additional evidence, including the opinions of the non-examining agency reviewers, other normal examination findings and instances when Plaintiff "sometimes" denied pain or swelling, his daily activities, and his job as a newspaper delivery driver from 2011 to August 2016. (D's Mem. 8-11, ECF No. 23). But while the ALJ acknowledged at least some of this evidence at other points in his decision, he made no mention of it when determining Plaintiff's standing limitation, and this Court "is confined to the rationales offered by the ALJ." *Shauger v. Astrue*, 675 F.3d 690, 695-96 (7th Cir. 2012).[5] But even assuming the ALJ had these facts in mind when determining this limitation, such reliance raises further issues which the ALJ and the Commissioner have failed to address.

For instance, although both agency reviewers similarly concluded that Plaintiff can stand and/or walk about six hours in an eight-hour workday (AR 103, 112, 126, 136), neither reviewer had the benefit of examining him. "Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." *Beardsley*, 758 F.3d at 839 (quoting 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1)). "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record," and "a contradictory opinion of a non-examining physician does not, by itself, suffice." *Vanprooyen v. Berryhill*, 864 F.3d 567, 573 (7th Cir. 2017) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)). As *Beardsley* makes clear, moreover, this principle applies with particular force to the

---

[5] *See also Hardy v. Berryhill*, 908 F.3d 309, 313 (7th Cir. 2018) ("the ALJ's decision cannot be defended on a basis not articulated in her order") (citing *Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014)); *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) ("the ALJ did not rely on this rationale in his opinion, so the Commissioner cannot now rely on it").

8

opinion of an examining agency physician, 758 F.3d at 839, who is "unlikely therefore to exaggerate an applicant's disability." *Garcia v. Colvin*, 741 F.3d 758, 761-62 (7th Cir. 2013). Thus, even assuming the ALJ was relying on the agency reviewers when he rejected Dr. Bacchus's opinion and adopted a more rigorous standing requirement, the problem in this case is the same problem addressed in *Beardsley*: "the ALJ did not provide a valid explanation for preferring the record reviewer's analysis over that of the agency's examining doctor." 758 F.3d at 839.

Nor did the ALJ account for the fact that both agency reviewers lacked the benefit of later treatment records documenting Plaintiff's joint and lower back pain, degenerative disc disease, and limp, including treatment records from his orthopedist (Dr. David Wittbrodt) in July 2016 and an MRI of his lumbar spine in May 2017. (AR 627-32, 704-05). Among other things, Dr. Wittbrodt noted bilateral knee pain, a positive right straight leg test, and a new diagnosis of right sciatica which the agency reviewers had not seen. (AR 628-30). And "ALJs may not rely on outdated opinions of agency consultant's 'if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.'" *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) (quoting *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)); *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016) ("the ALJ erred by accepting Dr. Ruiz and Dr. Sands's reviews of the evidence uncritically despite the fact that they never examined Thomas and did not have the benefit of much of the 2011 treatment records when they created their opinions") (citing Seventh Circuit decisions).

The ALJ's potential reliance on other records indicating normal examination findings poses a similar problem, since an ALJ may not isolate treatment records that suggest no disability while disregarding limitations documented in other records without explaining why. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (ALJ's light work RFC determination "did not engage

9

sufficiently with the evidence showing she could not do so"). The same is true of Plaintiff's daily activities and work as a delivery driver. While the ALJ and the Commissioner highlight Plaintiff's softball play, pet care, and other household chores (AR 18, 19, 20; D's Mem 8, 10, 13, ECF No. 23), they pay short shrift to Plaintiff's testimony that he abandoned softball due to pain (AR 63) and fail to explain how any of these activities bear on his ability to stand six hours during an eight-hour workday.[6] The relevance of Plaintiff's work as a delivery driver also requires elucidation. "There is no inherent inconsistency between being employed and disabled." *Ghiselli*, 837 F.3d at 778. What matters is whether Plaintiff's delivery driver work involved significant standing, as opposed to "seated tasks," which the ALJ likewise failed to address. *See Engstrand v. Colvin*, 788 F.3d 655, 661 (7th Cir. 2015) (claimant's ability to do "seated tasks" such as driving a tractor were not inconsistent with his testimony that he could not stand for very long without pain).

Accordingly, even if the ALJ meant to rely on all of the additional facts argued by the Commissioner when rejecting Dr. Bacchus's opinion and adopting a different standing limitation, this Court would still conclude that remand is required for the ALJ to explain that reliance. But this is not to say that a disability finding or even a different RFC must be reached on remand. Contrary to Plaintiff's suggestion, neither Dr. Bacchus's August 2015 consultative examination report nor Plaintiff's May 2017 lumbar spine MRI necessitates a disability finding as of their respective dates. *See* Pl.'s Br. 12, ECF No. 19). That is an issue for the ALJ to decide, once having properly explained his reasons (with the benefit of additional medical evidence if presented or needed). The Court also rejects Plaintiff's assertion that Dr. Bacchus "issued a work preclusive set

---

[6] *See Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016) (ALJ failed to "acknowledge and account for" the "crucial differences" between activities of daily living and a full-time job, and further failed to "identify a basis for his conclusion that the life activities [claimant] reported were inconsistent with the physical impairments she claimed"); *Burgos v. Saul*, -- Fed. App'x --, 2019 WL 5268689, at *3 (7th Cir. 2019) ("we have repeatedly underscored the necessity of the ALJ articulating why a claimant's daily activities undermine a physician's opinion and to avoid inferring an ability to do full-time work from a claimant's occasional activities") (citing Seventh Circuit decisions).

10

of limitations because they applied to part-time not full-time work." (Pl.'s Br. 6, ECF No. 19). To the contrary, his report clearly states that Plaintiff has the capacity for duties "*at least* part-time in nature," thus explicitly contemplating greater than part-time work. (AR 607, emphasis added). And again, that determination is for the ALJ. Thus, to be clear, this Court concludes only that the ALJ failed to explain how the evidence on which he relied (limited muscle weakness and no use of an assistive device) justified a six-hour standing limitation; and insofar as the ALJ meant to rely on other evidence to support that limitation, he failed to explain that too. The Court therefore recommends that the case be remanded for reconsideration of those issues.

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court **REVERSE** the decision of the Commissioner of the Social Security Administration and remand for further proceedings.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 19th day of December, 2019.

s/ Joshua P. Kolar<br>
MAGISTRATE JUDGE JOSHUA P. KOLAR<br>
UNITED STATES DISTRICT COURT